## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FRATERNAL ORDER OF POLICE LIBRARY OF CONGRESS LABOR COMMITTEE,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**LIBRARY OF CONGRESS, et al.,**<br><br>    **Defendants.** | Civil Action 08-01139  (HHK) |
| **JOY A. MYERS,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**UNITED STATES CAPITOL POLICE BOARD,**<br><br>    **Defendant.** | Civil Action 09-00666  (HHK) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff the Fraternal Order of Police Library of Congress Labor Committee ("FOP") brings case 1:08-cv-01139 ("FOP Case") against defendants the Library of Congress ("LOC"), James H. Billington in his official capacity as Librarian of Congress ("Librarian"), the United States Capitol Police ("USCP"), and the United States Capitol Police Board ("Board").  The FOP alleges two claims arising out of the merger of the LOC Police into the USCP ("Merger"):  a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a(a) ("ADEA").

Plaintiff Joy Myers, a fifty-eight year old officer with the LOC Police, brings case 1:09-cv-00666 ("Myers Case") against the Board alleging Title VII and ADEA claims arising out of the Merger.

Before the Court are the FOP's motion for a preliminary injunction [#21] and Myers's motions for preliminary and permanent injunctions [##3, 4]. Upon consideration of the motions, the oppositions thereto, the July 29, 2009 oral argument, and the record of this case, the Court concludes that the motions must be denied.

## I.  BACKGROUND

After the attacks of September 11, 2001, and the anthrax incidents of the same year, Congress turned its attention to Capitol area security. One of Congress's responses was to commission a report from the General Accounting Office ("GAO") on the desirability of merging the police forces of the legislative branch: the LOC Police, the Government Printing Office Police ("GPO") Police, and the USCP. The purpose of the GAO report was to address what Congress perceived as the "need for consistent security policies and practices, efficient management of resources, and fair treatment of law enforcement personnel." (Pl.'s Mot. for Prelim. and Permanent Inj., Ex. A at 1 ("GAO Report")).

The GAO Report identified several benefits a merged police force could provide, including better "coordination of police activities," "centralized intelligence gathering, dissemination, and threat assessments," more "consistent responses to emergency situations," and "flexibility in staffing." *Id.* at 4. The report also noted that the LOC Police and the USCP had overlapping primary jurisdictions, and performed similar missions protecting visitors, congressional members and staff, and national treasures. The GAO, however, concluded that the GPO Police and USCP "would not be as close a fit," because of differences in missions and

location. *Id.* at 6. The report concluded a merger between the LOC Police and the USCP "could enhance the overall security of Capitol Hill." *Id.* Following the issuance of the GAO report, Congress passed the United States Capitol Police and Library of Congress Police Merger Implementation Act of 2007, Pub. L. No. 110-178, 121 Stat. 2546 (2008) ("Merger Act").

The Merger Act provides that LOC Police will merge into the USCP by October 1, 2009. *See* Merger Act, *en passim*. According to the FOP and Myers, two differences between the USCP and the LOC Police give rise to this suit: the composition of their workforces and the fact that the USCP has a mandatory retirement age for its officers whereas the LOC Police does not. Regarding workforce composition, the FOP and Myers allege that the membership of the LOC Police is 87% Black rank-and-file officers and 59% Black supervisory officers, whereas the membership of the USCP is 29% Black rank-and-file officers and 16% Black supervisory officers. Regarding mandatory retirement, USCP officers are eligible for an annuity "after becoming fifty years of age and completing twenty years of service." 5 U.S.C. § 8336(m). USCP officers who are "eligible for immediate retirement under section 8336(m) [must retire] from the service on the last day of the month in which [they turn fifty-seven] years of age or complete[] [twenty] years of service if then over that age. 5 U.S.C. § 8335(c). The Board may, however, "exempt such [officers] from automatic separation under this subsection until that member becomes [sixty] years of age. *Id*.

Through the Merger, all LOC Police officers and civilian employees will be transferred to and become employees of the USCP. *See* Merger Act § 2(a)(1)-(2). Upon transfer to the USCP, only certain LOC officers will be eligible to become USCP officers. Specifically, the Merger Act provides:

> A Library of Congress Police employee shall become a member of the Capitol Police on the employee's transfer date if the Chief of the Capitol Police determines and issues a written certification that the employee meets each of the following requirements:
>
> (i) Based on the assumption that such employee would perform a period of continuous Federal service after the transfer date, the employee would be entitled to an annuity for immediate retirement under section 8336(b) or 8412(b) of title 5, United States Code (as determined by taking into account paragraph (3)(A)), on or before the date such employee becomes 60 years of age.
>
> (ii) During the transition period, the employee successfully completes training, as determined by the Chief of the Capitol Police.
>
> (iii) The employee meets the qualifications required to be a member of the Capitol Police, as determined by the Chief of the Capitol Police.

Merger Act § 2(b)(1)(A). LOC officers who do not meet these criteria will be transferred to the USCP as civilian employees. *See id*. The Merger Act guarantees that all LOC officers and civilian employees will be transferred to the USCP, whether as officers or as civilian employees; none will lose their jobs or suffer any loss of basic pay, rank, grade, leave, or compensatory time. Merger Act § 2(a)(1), (d)(1)-(2).

Although the Merger has not been consummated, LOC officers have started to attend the USCP officer training required by Merger Act § 2(b)(1)(A)(ii) in groups or phases. The first group of LOC officers completed training in December 2008. A second group of officers began training on June 22, 2009. This training notwithstanding, no officer has been transferred to the USCP. The USCP will effectuate transfers of LOC officers to the USCP on September 30, 2009.

The FOP filed its complaint in June 2008 and its amended complaint in November 2008. The FOP alleges that the Merger will have a discriminatory effect on Black LOC officers in violation of Title VII by not affording Black officers the same opportunities for promotion as

officers outside their protected class.  The FOP also alleges that the Merger will have a discriminatory effect on LOC officers over forty years old in violation of the ADEA by denying them training and promotion opportunities based on their age and by imposing mandatory retirement.  Myers filed her complaint in April 2009.  She alleges that through the Merger the USCP is discriminating against her on the basis of age in violation of the ADEA by refusing her training, denying her promotion opportunities, and imposing mandatory retirement on her.[1]  Plaintiffs seek preliminary and permanent injunctions barring the consummation of the Merger.[2]

## II.  ANALYSIS

In deciding a preliminary injunction motion, the Court balances four factors:  (1) plaintiffs' likelihood of success on the merits; (2) irreparable harm to the plaintiffs if the injunction is not granted; (3) substantial harm to defendants if the injunction is granted; and (4) the public interest.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("*CFGC*").  The Court evaluates the four factors on a "sliding scale."  *Davenport v.*

---

[1] The parties agree that the FOP raises a facial challenge to the Merger Act, alleging it is unconstitutional.  With respect to the putative constitutional claims, the Court notes that the FOP's complaint sets forth only two counts:  one under Title VII; the other under the ADEA.  No count raises a constitutional claim.  Having scoured the complaint, the Court finds only two references to constitutional claims.  First, the FOP alleges that "the portions of the Act which give the Chief . . . discretion to determine whether a specific LOC Officer qualifies to transfer as a [USCP] Officer instead of a civilian employee are unconstitutional because race and/or age discrimination already has influenced those decisions." (Am. Compl. ¶ 17.)  The Court interprets this as a claim that the Merger Act is facially unconstitutional insofar as it grants the Chief unfettered discretion to assess officers' qualifications including on the basis of race and/or age.  Second, the FOP requests a declaration that the Merger Act is "unconstitutional and discriminatory as applied." (*Id*. at 8-9.)  To the extent this request raises a challenge at all, the Court concludes it is limited by its terms to an "as applied challenge," not a facial challenge.

[2] The Court presumes that the FOP and Myers seek to enjoin the consummation of the Merger; plaintiffs request only that the Court issue an order "enjoining defendants" without explaining what plaintiffs want the Court to enjoin defendants from doing.

*Int'l Bhd. of Teamsters*, 166 F.3d 356, 361 (D.C. Cir. 1999).  If plaintiffs make an exceptionally strong showing on one factor, they need not make as strong a showing on the remaining factors. For example, if plaintiffs makes a strong showing of irreparable harm and there is no substantial harm to defendants, the Court applies a correspondingly lower standard for likelihood of success. *See WMATC v. Holiday Tours*, 559 F.2d 841, 843 (D.C. Cir. 1977).  Alternatively, if substantial harm to defendants is high and the showing of irreparable harm to plaintiffs is low, plaintiffs must demonstrate a much greater likelihood of success.  In this way, the Court balances all four factors against each other.  *Davenport*, 166 F.3d at 361.  Plaintiffs bear the burden of establishing that all four factors, taken together, weigh in favor of the injunction.  *CFGC,* 454 F.3d at 297.

Defendants contend that plaintiffs cannot establish the second factor, irreparable harm, and therefore the Court must deny their motions for preliminary injunctions.  Specifically, defendants contend that none of the injuries alleged by plaintiffs rise to the level of an irreparable injury because the Court has the power to remedy any of them adequately after the consummation of the Merger.  Plaintiffs seem to miss the point and do not counter this contention.  For example, the section labeled "irreparable harm" in the FOP's brief only argues that an employment action may support a discrimination claim.  In any event, the Court agrees with defendants that plaintiffs cannot establish that the Merger will cause irreparable harm to LOC Police officers.

Considering that "the basis of injunctive relief in the federal courts has always been irreparable harm," *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (quotations omitted), a court may deny a motion for a preliminary injunction and not address the remaining three factors where a plaintiff fails to establish irreparable harm, *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).  There is "a high standard" for irreparable harm.  *CFGC*, 454

F.3d at 297.  To be irreparable, an injury must be "certain and great," "actual and not theoretical," and "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id*.  The injury also must be "beyond remediation," meaning:

> Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.

*Id*. at 297-98 (citation omitted).

Because none of plaintiffs' alleged injuries is beyond remediation, the Court concludes that plaintiffs cannot make a showing of irreparable harm here.  Even if plaintiffs prevail in all their claims — denial of training, loss of promotion opportunities, forced retirement, placement into civilian rather than officer positions — the Court could remedy these claims by ordering training, reinstatement, back pay, and the like.  Indeed, courts consistently hold that economic loss, *see, e.g., Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), and loss of employment, *see, e.g., Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006), are not irreparable.  That is the case here.  Because plaintiffs cannot establish that the Merger will cause irreparable harm to LOC Police officers, the Court need not address the remaining preliminary injunction factors, and the Court concludes that the motions for preliminary injunctions must be denied.

### III.  CONCLUSION

For the foregoing reasons, it is this 3rd day of August 2009, hereby

**ORDERED** that the FOP's preliminary injunction motion [#21] and Myers's preliminary and permanent injunction motions [##3, 4] are **DENIED**.

Henry H. Kennedy, Jr.<br>
United States District Judge