UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRATERNAL ORDER OF POLICE LIBRARY OF CONGRESS LABOR COMMITTEE,<br><br>     Plaintiff,<br>  v.<br><br>LIBRARY OF CONGRESS, et al.,<br><br>     Defendants. | Civil Action 08-01139  (HHK) |

**MEMORANDUM OPINION AND ORDER**

On its on behalf and on behalf of its members, the Fraternal Order of Police Library of Congress Labor Committee ("FOP") brings this action against the Library of Congress, James H. Billington in his official capacity as Librarian of Congress, the United States Capitol Police, and the United States Capitol Police Board (collectively "defendants"). The FOP alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the U.S. Constitution, age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a), and the U.S. Constitution, and other claims described below. This action arises from the merger of the Library of Congress Police Force ("Library Police") and the United States Capitol Police ("Capitol Police"). Pursuant to the federal statute merging the two forces, officers of the Library Police over a certain age are ineligible to become members, rather than civilian employees, of the Capitol Police.

Before the Court are defendants' "Motion to Dismiss and for a More Definite Statement" [#24], which addresses several of the FOP's claims, and motion for summary judgment [#37], which seeks judgment as to the claims the motion to dismiss does not address.  Upon

consideration of the motions, the opposition thereto, and the record of this case, the Court concludes that the motion to dismiss should be granted in part and denied in part, the motion for summary judgment should be granted, and the motion for a more definite statement should be granted.

## I. BACKGROUND

In January 2008, Congress enacted the "U.S. Capitol Police and Library of Congress Police Merger Implementation Act of 2007" ("Merger Act").  Pub. L. No. 110-178, 121 Stat. 2546 (2008).  The Merger Act required transfer of all Library Police employees to the Capitol Police.  *Id.* § 2(a), 121 Stat. at 2546.  Officers of the Library Police "shall become either a member or civilian employee of the Capitol Police."  *Id.* § 2(a)(1).  To be eligible to become a Capitol Police officer rather than a civilian employee, a Library Police officer must be "entitled to an annuity for immediate retirement" before turning sixty years old, *id.* § 2(b)(1)(A)(i); in other words, the officer must be able to attain twenty years of service before reaching age sixty, *see id.*; 5 U.S.C. §§ 8336(b), 8412(b).  In addition, an officer must successfully complete training and meet qualifications specified by the Chief of the Capitol Police ("Chief" or "Chief of Police").  Merger Act § 2(b)(1)(A)(ii), (iii).

The Library Police do not have a mandatory retirement age, but a longstanding statutory provision mandates that all members of the Capitol Police "be separated from the service" upon reaching age fifty-seven with a possibility of extension to age sixty.  5 U.S.C. § 8335(c); *see also Riggin v. Office of Senate Fair Employment Practices*, 61 F.3d 1563 (Fed. Cir. 1995) (describing the history of mandatory retirement for federal law enforcement officers and noting that the current provision regarding Capitol Police officers was enacted in 1994 (citing Pub. L. No. 103-

283, § 307, 108 Stat. 1423, 1441-42 (1994))). A Library Police officer who becomes a civilian employee, rather than an officer, of the Capitol Police may continue to serve past the mandatory retirement age if he is not eligible for a retirement annuity upon reaching that age. Merger Act § 2(b)(2), 121 Stat. at 2547.

On June 30, 2008, the FOP—the bargaining unit for the Library Police—filed this suit, and on November 17, 2008, it filed an amended complaint. The amended complaint, which the Court finds notably lacking in organization, contains a variety of allegations in support of claims of discrimination. The Court attempts here to summarize its contents as coherently as possible.

The FOP alleges that eighty-seven percent of Library Police officers are African-American, and fifty-three percent of "the supervisory rank" of the Library Police are African-American. Am. Compl. ¶ 4. Seventy-five percent of Library Police officers are over age 40. In the Capitol Police force, twenty-nine percent of officers and sixteen percent of members of the "supervisory rank" are African-American. *Id.* ¶ 7.

The FOP alleges that over twenty of its members have been denied the opportunity to attend training that is a prerequisite, pursuant to the Merger Act, of transfer to an officer position with the Capitol Police.[1] According to the FOP, Library Police officers over the age of fifty-seven were not permitted to attend this training, and this denial was "based on race and age." *Id.* ¶¶ 17-18.[2]

---

[1] The amended complaint refers elsewhere to discriminatory impact on "over 20 African American FOP Officers and over 20 FOP Officers [over] the age of forty" without making clear whether it means to indicate that forty officers total faced discrimination or whether more than twenty officers were both African-American and over age forty. Compl. ¶ 20.

[2] The FOP also alleges that the Merger Act has "discriminatory effects" on Library Police because it prohibits them from working as law enforcement officers beyond retirement age

The amended complaint also includes an allegation that defendants "have denied all opportunity for promotion" to Library Police officers, which "preclude[s] those . . . officers accepted into the ranks of [the Capitol Police] from outranking similarly situated [Capitol Police] officers." *Id.* ¶ 14.

Although the amended complaint appears to allege only one claim under Title VII and one under the ADEA, the Court adopts the parties' understanding of the claims it intends to set forth. Therefore, the Court assumes the FOP alleges that (1) the Merger Act discriminates on the basis of race in violation of Title VII; (2) the Merger Act, on its face and as applied, is racially discriminatory in violation of the U.S. Constitution; (3) the Merger Act discriminates on the basis of age in violation of the ADEA; (4) the Merger Act discriminates on the basis of age in violation of the U.S. Constitution; (5) the Merger Act's provision giving the Chief of the Capitol Police "unreviewable discretion" to determine whether a Library Police officer may become a Capitol Police officer is "arbitrary and capricious"; and (6) the FOP has a cause of action based on the denial of promotions to Library Police officers.

## II. LEGAL STANDARD

**A.     Rule 12(b)(6) Dismissal**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint, or any portion of it, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

---

and thereby prevents officers who will retire as civilian employees from being permitted to carry a firearm under District of Columbia law. *Id.* ¶ 11.

Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citation omitted). A court considering a motion to dismiss pursuant to Rule 12(b)(6) must assume that all factual allegations in the complaint are true, even if they are doubtful. *Twombly*, 550 U.S. at 555.

**B.     Summary Judgment**

Summary judgment may be granted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," as opposed to evidence that "is so one-sided that one party must prevail as a matter of law." *Id.* at 248, 252. A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id.* at 255. But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

# III. ANALYSIS

Defendants have filed a motion to dismiss as well as a motion for summary judgment. Together, these motions seek dismissal of every claim the parties identify as contained in the FOP's amended complaint except for a claim regarding the denial of promotions, as to which defendants seek a more definite statement. The Court first considers defendants' argument that the FOP lacks standing to bring this suit, then addresses the viability of each claim in turn, and finally turns to defendants' motion for a more definite statement.

**A.    The FOP Has Standing to Bring This Suit on Behalf of its Members.**

Defendants make three arguments in their motion to dismiss contesting the FOP's standing to bring several claims in this suit: (1) the FOP has not established associational standing; (2) the injuries alleged are speculative; and (3) the FOP's claims are not ripe. Each argument has as its basic premise that the FOP has not sufficiently alleged injury to its members. Each fails to persuade the Court that the FOP lacks standing.

**1.    The FOP has sufficiently alleged facts to support associational standing.**

Associational standing rules are well established. To bring claims on behalf of its members, an association must show that "(1) at least one of its members would have standing to sue in [her] own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." *Sierra Club v. E.P.A.*, 292 F.3d 895, 898 (D.C. Cir. 2002) (citing *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 342-43 (1977)). To fulfill the first prong of this test, a member of the association must satisfy three elements constituting the "irreducible constitutional minimum of standing" mandated by Article

III: "(1) injury-in-fact, (2) causation, and (3) redressability." *Id.* (quoting and citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (internal quotation mark omitted).

Defendants contest only the FOP's ability to satisfy the injury-in-fact requirement in order to fulfill the first prong of the associational standing test. They contend that because "the amended complaint does not identify a single member who suffered [the] alleged injuries, or include an affidavit or other specific statement corroborating those claims," the FOP has failed to demonstrate that it may bring claims on behalf of its members. Defs.' Mot. to Dismiss at 11. In response, the FOP asserts that "[a]lthough Defendant argues that Plaintiff has not identified any specific members, Defendant has likewise cited no law requiring the identification of particular members in order to establish associational standing." Pl.'s Opp'n to Def.'s Mot to Dismiss ("Pl.'s Opp'n") at 12-13.

Defendants' argument fails. Their suggestion that the FOP is obligated to present evidence in support of the allegations in its complaint in response to a motion to dismiss is not supported by caselaw. As the D.C. Circuit has explained, the U.S. Supreme Court has made clear that "the burden of production a plaintiff must bear in order to show it has standing to invoke the jurisdiction of the district court varies with the procedural context of the case." *Sierra Club*, 292 F.3d at 898. "At the pleading stage"—in other words, when a plaintiff is opposing a motion to dismiss—"general factual allegations of injury resulting from the defendant's conduct may suffice . . . [because] the court 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 898-99 (quoting *Defenders of Wildlife*, 540 U.S. at 561) (second alteration in original). Only when a case has proceeded to the summary

judgment stage must a plaintiff cease to rely on allegations and "'set forth' by affidavit[s] or other evidence 'specific facts.'" *Id.* (quoting *Defenders of Wildlife*, 540 U.S. at 561).

As to this issue, defendants seek dismissal rather than summary judgment. And although the FOP's amended complaint may be subject to other attacks, it alleges that some members of the FOP will not be permitted to become officers of the Capitol Police. It states that more than twenty Library officers over age fifty-seven have been disallowed from attending a Capitol Police training program and will not be transferred to the Capitol Police as officers. Am. Compl. ¶¶ 17-18.[3] Therefore, the Court will not conclude on this ground that the FOP lacks associational standing.

### 2.     The injury alleged is not too speculative to support standing.

Next, defendants argue that any injury the FOP's members have alleged is speculative and therefore insufficient to satisfy the "injury-in-fact" requirement for standing to bring most of the FOP's claims. Defendants contend that because transfer of Library Police officers to the Capitol Police was incomplete at the time the FOP filed its case and the parties submitted their briefing on the motion to dismiss to the Court, "no officer had suffered an injury." Defs.' Mot. to Dismiss at 12-13. The FOP responds that its "members 57 and over have been denied the opportunity to participate in the [Capitol Police]'s Training Academy." Pl.'s Opp'n at 14.

The Court cannot agree with defendants. It is well established that, for standing purposes, the alleged injury must be "actual or imminent, not 'conjectural' or 'hypothetical.'" *Defenders of Wildlife*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). But these

---

[3]     Defendants do not suggest that loss of a position as a law enforcement officer does not constitute injury.

requirements do not mean, as defendants suggest, that the injury must have already occurred. By statute, certain Library Police officers will be denied positions as Capitol Police officers. According to the FOP's amended complaint, some older officers had already been alerted by the time of filing that they would not receive training necessary for transfer, indicating that the Chief of Police intends to comply with the relevant provision of the Merger Act.[4] This situation is not analogous to those in which the Supreme Court has indicated that an alleged injury is so speculative that it might not occur at all. *See, e.g.*, *Defenders of Wildlife*, 504 U.S. at 564 (concluding that the stated intentions of individuals to visit a particular location that is home to endangered wildlife, without concrete plans for such a trip, "do not support a finding of the 'actual or imminent' injury that our cases require"); *Whitmore*, 495 U.S. at 156-57 (concluding that injury that would not arise unless the petitioner was granted habeas relief, retried for a crime of which he had been convicted, and sentenced to death was "too speculative to invoke the jurisdiction of an Art. III court"). Because the injury of being disallowed to become a Capitol Police officer is "actual or imminent," the Court will not dismiss any of the FOP's claims on this ground.

---

[4] Defendants' argument seems to rest in part on their assumption that the alleged injury is discrimination that will occur when the Chief of Police makes decisions as to who may become a Capitol Police officer. The Court believes defendants have misread the FOP's amended complaint. The FOP alleges that the Merger Act itself, not the Chief's decisions, is the source of the injury. *See* Am. Compl. ¶ 17 (alleging that "race and/or age discrimination has already influenced" the decisions left to the Chief). Insofar as defendants' understanding of the amended complaint is also accurate, the Court agrees that injury arising from discriminatory decisions the FOP predicts the Chief will make are the type of conjectural injury that does not suffice to support standing. *See Worth v. Jackson*, 451 F.3d 854, 860 (D.C. Cir. 2006) (holding that where a plaintiff "challenge[d] no statute, regulation, or written policy" regarding allegedly discriminatory employment decisions but instead was guessing how an agency would make hiring decisions in the future, the possibility of injury was "too remote and attenuated to establish" standing (quoting *Branton v. FCC*, 993 F.2d 906, 909 (D.C. Cir. 1993))). Therefore, only claims challenging the Merger Act itself may go forward.

### 3. The FOP's claims are ripe.

Third, defendants make the related argument that the FOP's claims are not ripe. They contend that because those claims "hinge upon future events," they are "not yet fit for judicial review." Defs.' Mot. to Dismiss at 17. Defendants rely extensively on *Worth v. Jackson*, 451 F.3d 854 (D.C. Cir. 2006). The FOP does not reply directly to this argument, but because it is so closely connected to the issue of speculative injury, the Court assumes the FOP's assertions as to that question apply here.

As stated in *Worth*, the Supreme Court "has repeatedly held that '[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Worth*, 451 F.3d at 861 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)) (alteration in original). As explained above, there is essentially no question that, as mandated by the Merger Act's terms, Library Police officers above a certain age and without requisite years of service will not become Capitol Police officers. The motivations behind the statute as well as its effect on Library Police officers can already be known. This is not an "abstract disagreement" unsuitable for judicial review. *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). Therefore, the Court will not dismiss any of FOP's claims on ripeness grounds.

**B.   The FOP's Title VII Claim Fails as to Defendants the Capitol Police and Capitol Police Board but Survives as to Defendants the Library of Congress and Librarian of Congress.**

Defendants make two arguments for dismissal of the FOP's statutory claims. Because, as explained below, the Court dismisses the FOP's ADEA claim on other grounds, the Court resolves these issues only as they relate to the FOP's Title VII claim.

      **1.**      **Library of Congress employees may not bring Title VII claims against the Capitol Police or Capitol Police Board.**

Defendants argue that, based on sovereign immunity, the Court lacks subject matter jurisdiction over Title VII claims brought by employees of the Library of Congress against the Capitol Police and the Police Board. Specifically, defendants assert that the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301 *et seq.*, waives sovereign immunity for purposes of certain Title VII claims against the Capitol Police only for "covered employees," a category that does not include Library employees. Defs.' Mot. to Dismiss at 20 (citing 2 U.S.C. § 1301(3)). The FOP does not contest this argument and has therefore conceded the point. *See Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) ("It is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002))). Furthermore, defendants are correct that the CAA creates jurisdiction in federal court for claims brought pursuant to, *inter alia*, Title VII by "a covered employee," 2 U.S.C. §§ 1302, 1408, and the definition of "covered employee" does not include employees of the Library of Congress, *id.* § 1301(3). Therefore, the Court shall dismiss the Title VII claim against the Capitol Police and Capitol Police Board.

      **2.**      **The Title VII claim against the Library and Librarian of Congress is not barred for failure to exhaust administrative remedies.**

Defendants argue that the FOP's Title VII claim against the Library and Librarian of Congress must also fail because, although Library Police may bring such claims in federal court, the FOP has failed to properly exhaust administrative remedies as required before doing so. Defendants note that the FOP filed its complaint in this Court on June 30, 2008 and its amended

11

complaint on November 17, 2008. They argue the FOP therefore failed to comply with the statutory provision permitting plaintiffs to file Title VII claims in federal court only after 180 days have passed following the filing of a charge with the Equal Employment Opportunity Commission ("EEOC"), which in this case occurred on May 30, 2008, or within ninety days of receiving a decision from the EEOC, which in this case occurred on August 5, 2008.

The FOP responds that the time limitations in Title VII regarding the exhaustion of administrative remedies are not jurisdictional and so are subject to equitable considerations, such as equitable tolling. The FOP further argues that the cases defendants cite in support of their position "involve parties that filed suit after the ninety[-]day time line," whereas here, the FOP filed this action before the ninety-day deadline had passed. Pl.'s Opp'n at 17.

Although defendants are correct that the FOP did not comply precisely with Title VII's requirements, the defect has been cured and the claim can go forward. The basic rules are not in dispute: Title VII permits an employee of the Library of Congress to file an action in federal court either "[w]ithin 90 days of receipt of notice of final action" resulting from the administrative process or "after one hundred and eighty days from the filing of the initial charge with the . . . [EEOC]." 42 U.S.C. § 2000e-16(a), (c). The underlying facts are also uncontested: the FOP filed a charge with the appropriate EEOC office on May 30, 2008; the FOP filed a complaint in this Court on June 30, 2008; and the EEOC office dismissed the charge before it on August 5, 2008. It is clear, therefore, that the FOP's June 30 complaint, filed in this Court, was premature because on that date there had been no final administrative action and fewer than 180 days had passed since the FOP filed with the EEOC office. *See id.* § 2000e-16(c); *see also Jones v. Ashcroft*, 321 F. Supp. 2d 1, 11-12 (D.D.C. 2004) (dismissing Title VII claim of federal employee for failure to wait 180 days from the date of filing an administrative complaint where

the EEOC had not issued a final decision). But the D.C. Circuit has held that "[r]eciept of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court." *Williams v. Wash. Metro. Area Transit Auth.*, 721 F.2d 1412, 1418 n.12 (1983) (citations omitted). This case was still pending when the EEOC issued a decision on August 5, 2008, which sustained the FOP's right to sue in federal court. *See* Defs.' Mot. to Dismiss, Ex. 1 (EEOC Decision) at 11 (explaining the right to sue within ninety days of receipt of the opinion). Therefore, the Court will not dismiss the FOP's Title VII claims against the Library and Librarian of Congress on this ground.

C. **The FOP's Constitutional Challenge to the Merger Act as Racially Discriminatory on its Face Must Fail, but its As-Applied Challenge May Proceed.**

In their motion for summary judgment, defendants argue that the Merger Act "simply does not discriminate against African Americans 'on its face'" because it "contains no language that conditions transfer [to the Capitol Police] or any other benefit upon an officer's race." Defs.' Mot. for Summ. J. at 7. The FOP has filed no opposition to the summary judgment motion,[5] thereby allowing the Court to treat the arguments therein as conceded. LCvR 7(b); *Steinhorst Assocs. v. Preston*, 572 F. Supp. 2d 112, 125 n.14 (D.D.C. 2008) (citing *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003)). Furthermore, the Supreme Court has instructed that facial challenges to statutes on constitutional grounds "are disfavored." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (U.S. 2008). For these

---

[5] The deadline for filing such opposition, which, pursuant to the eleven-day time limit set in LCvR 7, fell in August 2009, has long passed. The FOP has neither submitted an opposition nor requested an extension of the time to do so.

reasons, the Court concludes that defendants are entitled to summary judgment as to the FOP's facial challenge to the Merger Act as racially discriminatory.

As to FOP's apparent claim that, as applied, the Merger Act discriminates on the basis of race in violation of the U.S. Constitution, defendants' only arguments for dismissal are that the FOP lack standing. As explained above, those arguments fail. Accordingly, the FOP may pursue, against all defendants, its as-applied challenge to the Merger Act as racially discriminatory in violation of the Constitution.

**D.     The FOP's ADEA Claim Must Fail Because the Provision of the Merger Act at Issue is Exempt from the ADEA.**

Defendants argue in their motion for summary judgment that the Merger Act's application of the mandatory retirement age of Capitol Police to officers of the Library Police is not subject to a challenge under the ADEA because age limits for law enforcement officers "are exempted from the statute's coverage." Defs.' Mot. for Summ. J. at 12-13 (quoting *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 69 (2000)). As noted, the FOP has not filed an opposition to the motion for summary judgment, so the Court may treat the arguments defendants assert in that motion as conceded. LCvR 7(b); *Steinhorst Assocs.*, 572 F. Supp. 2d at 125 n.14 (citing *Buggs*, 293 F. Supp. 2d at 141). Furthermore, the Court concludes in a joint opinion issued in two cases related to this action—*Rovillard v. U.S. Capitol Police Bd.*, Civil Action No. 09-682; *Perry v. U.S. Capitol Police Bd.*, Civil Action No. 09-683—that defendants' position is correct.[6]

---

[6]     As explained in those opinions, the D.C. Circuit and United States Supreme Court agree that Congress has exempted age requirements for federal law enforcement officers from the provisions of the ADEA. *See* 5 U.S.C. § 3307(d) ("The head of any agency may determine and fix the minimum and maximum limits of age within which an original appointment may be made to a position as a law enforcement officer."); *Kimel*, 528 U.S. at 68-69 (noting in dicta that "[u]nder the current ADEA, mandatory age limits for law enforcement officers and firefighters—at federal, state, and local levels—are exempted from the statute's coverage" (citing

E.  **The FOP's Constitutional Challenge to the Merger Act Based on Age Discrimination Must Fail Because the Statute is Rationally Related to a Legitimate Government Purpose.**

Defendants' unopposed motion for summary judgment further argues that an equal protection challenge[7] to the Merger Act on the ground that it is discriminatory on the basis of age must fail because the statute survives rational-basis review. This argument too is conceded, and it is also correct. As explained in more detail in the *Rovillard* and *Perry* opinion, a statute does not violate the Equal Protection Clause by "discriminat[ing] on the basis of age . . . if the age classification . . . is rationally related to a legitimate state interest," *Kimel*, 528 U.S. at 83 (citations omitted), and mandatory retirement for law enforcement officers is rationally related to the government's interest in having a physically fit police force, *cf. Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 313-14 (1976).

F.  **The FOP's "Arbitrary and Capricious" Claim Must Be Dismissed.**

Defendants assert that "[u]nlike final agency decisions or regulations, federal statutes cannot be invalidated simply because a court finds them 'arbitrary and capricious.'" Defs.' Mot. to Dismiss at 26. Therefore, defendants seek dismissal of the FOP's claim alleging that the provision of the Merger Act giving the Chief of Police the authority to determine which Library

---

5 U.S.C. § 3307(d), (e); 29 U.S.C. § 623(j))); *Stewart v. Smith*, 673 F.2d 485, 490-94 (1982) (holding that "section 3307(d) is an exception to the ADEA" because to apply the ADEA "would require us to adopt a strained reading of section 3307(d) and to ignore Congress' clear intent to employ maximum entry ages as a means towards securing a 'young and vigorous' work force of law enforcement officers").

[7] The federal government must adhere to the Equal Protection Clause of the Fourteenth Amendment by virtue of the Due Process Clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954).

Police officers will become Capitol Police officers is arbitrary and capricious. The FOP has not responded to this argument.

The Court agrees with defendants that it has no power to overturn a statute based on a conclusion that its provisions are "arbitrary and capricious."[8] *See* 5 U.S.C. § 706(2) (mandating that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions"—not legislative acts—"found to be," *inter alia*, "arbitrary" or "capricious"). This claim is dismissed.

### G. Defendants' Motion for a More Definite Statement Regarding the Denial of Promotions Claim is Granted.

As to an apparent claim in the FOP's amended complaint regarding the denial of promotions to Library Police officers, defendants have moved, pursuant to Federal Rule of Civil Procedure 12(e), "for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). Specifically, defendants assert that without knowing which officers requested and were denied promotions, when these denials occurred, and by whom the decisions were made, they cannot respond to this claim. The FOP responds that it "has filed a short and plain statement of its claims such that Defendant is given fair notice of Plaintiff's claims and the facts upon which they rest," and therefore defendants' motion should be denied. Pl.'s Opp'n at 40.

The defendants' position has merit. Under Rule 12(e), "[a] party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Although "courts are reluctant to compel

---

[8] The Court will not assume that the FOP intended instead to assert this claim against the Chief for misusing the discretion the Merger Act provides because the amended complaint describes no discretionary agency decisions to which the FOP might object.

a more definite statement pursuant to Rule 12(e)" out of fear such action will become a substitute for discovery, *Hilska v. Jones*, 27 F.R.D. 16, 21 (D.D.C. 2003) (citations omitted), it is appropriate to do so here.  The FOP's amended complaint mentions promotions twice.  It alleges that "[s]ince Defendants first contemplated subsuming the [Library] Police into the [Capitol Police], Defendants have denied all opportunity for promotion to members of the [Library] Police," and "[t]he consequence of this policy is to preclude those [Library] officers accepted into the ranks of [the Capitol Police] from outranking similarly situated [Capitol Police] officers."  Am. Compl. ¶ 14.  It later states that "[t]he [Merger] Act and the conduct of Defendants has denied Plaintiff's members the opportunity for promotion and advancement as [] sworn officers based on race and age."  Am. Compl. ¶ 18.  These allegations are not only devoid of factual details but also fail to explain on what source of law any claim related to the denial of promotions is based.  Because the Court cannot ascertain what the FOP's promotion-related claim is, it cannot find that defendants are able to respond to it.  Therefore, the Court concludes that the motion for a more definite statement should be granted.

## IV. CONCLUSION

For the foregoing reasons, it is this 4th day of March 2010, hereby

**ORDERED** that defendants' motion to dismiss [#24] is **GRANTED** in part and **DENIED** in part; and it is further **ORDERED** that defendants' motion for summary judgment [#37] is **GRANTED**.  The FOP's claim that the Merger Act is discriminatory on the basis of race in violation of Title VII survives as to defendants the Library of Congress and the Librarian of Congress, and its claim that the Merger Act has racially discriminatory effect in violation of the U.S. Constitution proceeds as to all defendants.

It is further **ORDERED** that defendants' motion for a more definite statement [#24] is **GRANTED**.  The FOP shall provide a revised pleading adequately describing any claim it seeks to assert based on the denial of promotions to Library Police officers by no later than March 27, 2010.

                                                              Henry H. Kennedy, Jr.
                                                              United States District Judge